IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EVM SYSTEMS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:13-CV-184 |
| | § | |
| REX MEDICAL, L.P., *et al*. | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff EVM Systems, LLC's Motion for Summary Judgment of No Anticipation, Non-obviousness, No Indefiniteness, No Lack of Written Description, and No Lack of Enablement (Docket No. 105), Defendants Rex Medical, L.P. and Argon Medical Devices, Inc.'s Cross-Motion of Invalidity of the '670 Patent for Indefiniteness and Lack of Written Description, and Response in Opposition to Plaintiff EVM Systems, LLC's Motion for Summary Judgment (Docket No. 123), and Defendants' Motion and Memorandum of Law to Exclude and Strike the Opinions of Scott D. Hakala Regarding Damages (Docket No. 111). On May 28, 2015, the Court heard oral argument on these Motions. On June 10, 2015, the Court issued an Order that granted-in-part and denied-in-part both Motions. Docket No. 182. This Order memorializes the reasons for the Court's rulings.

## BACKGROUND

Plaintiff EVM Systems, LLC's ("EVM") filed this lawsuit on February 20, 2013, and accuses Defendants Rex Medical, L.P. and Argon Medical Devices, Inc. ("Defendants") of

1

infringing United States Patent Number 8,052,670 (the " '670 Patent"). The '670 Patent is directed to a medical device for catching particles in the human body. The accused products are vena cava filters.

**MOTIONS FOR SUMMARY JUDGMENT**

EVM filed its motion for summary judgment that the '670 Patent is not invalid on the grounds of anticipation, obviousness, indefiniteness, lack of written description, and enablement requirements. Docket No. 105 at 1. Defendants responded to EVM's motion and filed a cross-motion for summary judgment that the '670 Patent is invalid on the grounds of indefiniteness and lack of written description. Docket No. 123 at 1.

**APPLICABLE LAW**

Federal Rule of Civil Procedure 56(a) provides for summary judgment when "there is no genuine dispute as to any material fact." A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the movant for summary judgment demonstrates the absence of a genuine dispute over any material fact, the burden to show that there is a genuine issue for trial shifts to the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). A court must draw all reasonable inferences in favor of the non-moving party. *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007).

*Anticipation*

A patent is entitled to a presumption of validity, and an accused infringer must prove invalidity by clear and convincing evidence. *Metabolite Labs., Inc. v. Lab. Corp.*, 370 F.3d 1354, 1365 (Fed. Cir. 2004).

> A person shall be entitled to a patent unless—
> . . . .
> **(e)** the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for the purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language;

35 U.S.C. § 102.

To invalidate patent claims based on prior art, the challenger to the patent must show by clear and convincing evidence that the earlier invention is prior art under § 102 and the earlier invention includes all elements of the claims at issue. *Netscape Communications Corp. v. Konrad*, 295 F.3d 1315, 1320 (Fed. Cir. 2002). Anticipation is a question of fact. *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 20 (Fed. Cir. 2000).

*Obviousness*

A patent is invalid under 35 U.S.C. § 103(a) "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art ("PHOSITA") to which said subject matter pertains." Obviousness under § 103(a) is a question of law based on underlying facts. *Winner Int'l Royalty Corp. v. Want*, 202 F.3d 1340, 1348 (Fed. Cir. 2000). Factual inquiries necessary for establishing obviousness include:

> (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations

*Dystar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006) (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966)). Summary judgment of obviousness is appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007).

*Indefiniteness*

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112(b). "A claim is invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.' " *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374 (Fed. Cir. 2015) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, -- U.S. --, 134 S.Ct. 2120, 2124 (2014)). Whether a claim meets this definiteness requirement is a matter of law. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344 (Fed. Cir. 2007). A party seeking to invalidate a patent must overcome a presumption that the patent is valid. *See* 35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. Partnership*, -- U.S. --, 131 S. Ct. 2238, 2243 (2011); *United States Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996). As such, the burden is on the challenging party to prove the patent's invalidity by clear and convincing evidence. *Microsoft*, 131 S. Ct. at 2243; *United States Gypsum Co.*, 74 F.3d at 1212. The ultimate issue is whether someone working in the relevant technical field could understand the bounds of a claim. *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010).

*Written Description*

A patent specification must contain a written description that enables a person of ordinary skill in the art to make and use the claimed invention. 35 U.S.C. § 112(a). The description must allow a person of ordinary skill in the art to recognize that the inventor invented what was claimed and possessed what was claimed at the filing date. *Id.* (citations omitted).

"A claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language." *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) (citing *Union Oil Co. v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000)). Actual reduction to practice is not a requirement—constructive reduction to practice is sufficient. *See Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1366-67 (Fed. Cir. 2006) (citations omitted). While the written description requirement does not demand specific wording or phrasing, it is not enough for the description to render the invention obvious. *Ariad*, 598 F.3d at 1352 (citations omitted).

Patents are presumed valid, and that presumption can only be overcome with clear and convincing evidence. *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 962 (Fed. Cir. 2002) (citing *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999)). "Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008) (citing *Invitrogen Corp. v. Clontech Labs, Inc.*, 429 F.3d 1052, 1072-73 (Fed. Cir. 2005)). A conclusory expert declaration does not raise an issue of material fact. *Id.* at 1309.

*Enablement*

The enablement requirement is separate and distinct from the written description requirement. *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*) (citing *Vas-Cath Inc. v Mahurkar*, 935 F.2d 1555, 1562-63 (Fed. Cir. 1991)). A patent specification must enable a person of ordinary skill in the art to make and use the claimed invention. 35 U.S.C. § 112(a). While enablement under § 112 has underlying questions of fact, whether a claim satisfies the enablement requirement is ultimately a question of law reviewed *de novo*. *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010). "The enablement requirement is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008) (quoting *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003)). " 'The scope of the claims must be less than or equal to the scope of the enablement' to 'ensure[] that the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims.' " *Id.* (quoting *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190 1195–96 (Fed. Cir. 1999)).

**DISCUSSION**

*Anticipation in view of Lefebvre*

EVM moves for a finding of no anticipation stating that Defendants allege the '670 Patent is anticipated by United States Patent Number 5,108,418 ("Lefebvre"). Docket No. 105 at 11. EVM asserts that Lefebvre does not anticipate the '670 Patent because Lefebvre does not disclose a "monolithic memory metal tube." *Id.* EVM argues that Lefebvre's disclosure of a material with a "certain elasticity" does not satisfy a "memory metal" limitation because

materials generally have "some elasticity, but do not exhibit a memory effect or superelasticity." *Id.* EVM further argues that Lefebvre does not disclose a "'monolithic' memory metal tube" because devices at the time of Lefebvre would have been comprised of individual wires. *Id.* at 12.

EVM further states that Lefebvre does not anticipate the '670 Patent because Lefebvre does not disclose a "metal tube having only a single lumen." Docket No. 105 at 11. EVM contends that Lefebvre discloses a device with "an ogival head, which is shown to be solid, closed curved end." *Id.* According to EVM, such a device could not form a tube having a lumen as required by the '670 Patent. *Id.*

Defendants respond that Lefebvre does teach a memory metal tube because it discloses a device made from a material having "a certain elasticity, with the result that the legs 3 may be brought substantially against one another in a sheath…" Docket No. 123 at 27. Defendants argue that Lefebvre discloses a monolithic metal because the specification describes forming "teeth" by "cutouts of the metal, as opposed to welding." *Id.* at 27–28. Defendants also assert that Lefebvre discloses a lumen limitation in line with the Court's construction of "a longitudinal passage of the tube" because there is no requirement that the passageway be open at both ends. *Id.* at 28.

EVM and Defendants present conflicting evidence as to whether Lefebvre anticipates the '670 Patent. Having considered the issues presented in light most favorable to Defendants, there are genuine issues of material fact. The question of whether Lefebvre teaches a "monolithic memory metal tube" having a "single lumen" is best left for the trier of fact. Accordingly, EVM's Motion for Summary Judgment (Docket No. 105) with respect to no anticipation is **DENIED**.

*Obviousness in view of Heaven*

EVM also moves for a finding of non-obviousness stating Defendants' expert asserts the '670 Patent is obvious over United States Patent Number 5,330,483 ("Heaven"). Docket No. 105 at 13. EVM argues that Heaven "teaches away from the claimed invention," and "cannot be the basis of any obviousness combination." *Id.* EVM states Heaven teaches a device that contracts when above the transformation temperature instead of expanding as taught by the '670 Patent. *Id.* EVM contends that at the transformation temperature a device, as disclosed by Heaven, "would not have sufficient rigidity to maintain the expanded shape of the expandable section." *Id.* EVM argues that no reference would make the '670 Patent obvious when combined with Heaven because even if Heaven was modified to expand when heated, it would not be suited for its intended purpose of crushing particles. *Id.* at 14.

Defendants respond that EVM "mischaracterizes" Heaven and that it does teach the "sufficiently rigid" limitation. Docket No. 123 at 28. Defendants contend Heaven teaches metal members that "expand within and contact the tubular structure of the human body" at body temperature. *Id.* at 28–29. Defendants state Heaven also teaches that the metal members "are resistant to contraction from the expanded state when contacting the human body and … require heat to reduce the size of the metal." *Id.* at 29. Defendants conclude that Heaven can be used as a prior art reference for an obvious rejection, and its expert's report of Heaven shows that a person skilled in the art would be motivated to combine Heaven with other prior art references. *Id.*

While obviousness is a legal question, it is based on factual findings. EVM and Defendants present conflicting evidence as to whether Heaven and other references would make the '670 Patent obvious. Although Heaven appears to teach the opposite action of contracting

8

when heated as opposed to expanding, this question is best left for the jury to decide. Accordingly, EVM's Motion for Summary Judgment (Docket No. 105) with respect to non-obviousness is **DENIED**.

*Indefiniteness*

Both parties move for summary judgment based on whether or not "distal end" is indefinite. EVM contends summary judgment is appropriate because there is not a factual question in relation to the term "distal end." Docket No. 105 at 15. EVM states that the Court determined "distal end" did not require construction because "the claim language is clear." *Id.* (quoting Docket No. 61 at 13). EVM further states the claim construction order found that "distal end" does not require a point of reference. *Id.* at 16 (citing Docket No. 61 at 12–13). "Distal end" merely refers to one of the two ends on a device —*i.e.*, opposite the proximal end— and a particle may enter the device through either end. *Id.* at 16–17 (citing Docket No. 61 at 13). EVM argues that in light of the Court's claim construction order the "distal end" of the device is "clearly determinable" to a person of ordinary skill in the art and by a lay juror. *Id.* at 17.

Defendants respond in a cross-motion for summary judgment that "distal end" is indefinite because the '670 Patent does not describe which end of a device would be the "proximal" or "distal end" with "reasonable certainty." Docket No. 123 at 2–3 (citing *Nautilus*, 134 S.Ct. at 2124). Defendants argue that even with a claim construction order, "a construed claim term can nonetheless render a claim indefinite." *Id.* at 3. Defendants maintain that to determine which end is the "distal end," there must be a point of reference. *Id.* at 5. Defendants argue that the claim construction did not conclude a point of reference was not needed to determine which end is the "distal end." *Id.* at 7. Defendants contend that the claim construction order simply states the direction of blood flow or the physician are not proper reference points.

9

*Id.* Defendants argue that a potential infringer must make separate infringement determinations depending on where the "distal end" is located. *Id.* at 10.

The fact that a claim term may not be precise does not automatically render a claim indefinite, nor does it mean that a person of ordinary skill in the art would not be able to understand the claim with "reasonable certainty." In fact, the metes and bounds of a claim may be difficult to determine, yet the claim is still definite. *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). Here, the '670 Patent discloses an apparatus with only two ends. A person of ordinary skill in the part would be able to study an apparatus in light of the '670 Patent and determine which end is the "distal end." Accordingly, EVM's Motion for Summary Judgment (Docket No. 105) with respect to indefiniteness is **GRANTED** and Defendants' Cross-Motion for Summary Judgment (Docket No. 123) with respect to indefiniteness is **DENIED**.

*Written Description and Enablement*

EVM moves for summary judgment that the '670 Patent complies with the written description and enablement requirements. Docket No. 105 at 18. EVM contends Defendants improperly assert that the '670 Patent lacks a written description and fails to enable a person with ordinary skill in the art with respect to:

1. a "retrieval basket" being used "for retrieving particles to be removed from the human body;" and

2. the "retrieval basket" is bound solely on one side to catch "a solid particle having a maximum cross-sectional dimension greater than a maximum cross-sectional dimension of the distal end of the metal tube transverse to the central longitudinal axis of the metal tube."

Docket No. 105 at 18.

Defendants cross-move for summary judgment that the '670 Patent is invalid for its failure to meet the written description requirement. Docket No. 123 at 10. Defendants argue that EVM interlocks the written description and enablement requirements, creating an appearance of a material issue of fact dispute when there is none. *Id.* Defendants state that the requirements are distinct from each other, and EVM fails to meet the threshold written description requirement. *Id.* at 10–11.

Defendants contend is it undisputed that the '670 Patent requires a "retrieval basket" to remove a particle from the human body ***"somehow."*** *Id.* at 12 (emphasis in original). Defendants argue the '670 Patent fails the written description requirement because it does not disclose how the particle is to be removed. *Id.* Specifically, Defendants assert the '670 Patent specification does not disclose removing the particle from the body by dissolution. *Id.* at 14–15. Defendants argue that a person of ordinary skill in the art would understand that the "retrieval basket" does not remain in the human body, and dissolution would not constitute removal. *Id.* at 15–17. Additionally, Defendants contend the '670 Patent does not disclose catching the particle in the "retrieval basket" by fluid flow in the blood stream. *Id.* at 18–22. Defendants argue that the '670 Patent discloses a "retrieval basket," which is a specific medical device and requires an operator. *Id.* at 19–20. Defendants further argue that EVM is attempting to broaden the '670 Patent's scope to capture vena cava filters, which are passive devices and are left in the human body to trap particles through the blood stream. *Id.* at 19–20.

Finally, Defendants assert that the '670 Patent specification does not describe catching particles within an open-ended expanded section of a "retrieval basket" by fluid flow, when the particle has "a cross-sectional dimension greater than a maximum cross-sectional dimension of the 'distal end' of the metal tube transverse to the central longitudinal axis of the metal tube." *Id.*

at 22–25. Defendants contend EVM's reliance on how such a device would capture a particle is obvious to a person of ordinary skill in the art is flawed. *Id.* at 24–25. Defendants argue that the '670 Patent fails to sufficiently describe how a particle with "a maximum cross sectional dimension greater than a maximum cross-sectional dimension of the distal end of the metal tube transverse to the central longitudinal axis of the metal tube" would be caught in a passive device like a filter. *Id.* at 22.

EVM replies that Defendants mischaracterize the standard for the written description requirement as it applies to an apparatus claim. Docket No. 130 at 4–5. EVM contends the proper standard is whether the '670 Patent specification "sufficiently describes the claimed structure of the medial device," and the method for how the device is used is beyond the scope of the claims. *Id.* at 4. EVM argues the claim construction order recognizes that dissolutions is within the scope of the '670 Patent, and it was a known method of removal at the time of filing. *Id.* at 5–6. EVM further asserts that Defendants are attempting to apply a narrow interpretation to the term "retrieval basket." *Id.* at 6–7. EVM argues the claims do not refer to a specific medical device known as a "retrieval basket," but in fact disclose a specific structure defined within the claims as a "retrieval basket," which covers both passive and active devices. *Id.*

Lastly, EVM contends the '670 Patent specification is not limited to a single embodiment for catching particles. *Id.* at 7–8. EVM states Defendants improperly rely on a figure to support their argument that a particle having a cross-sectional dimension greater than the distal end could not enter through the distal end. *Id.* at 8. EVM argues the '670 Patent discloses an expanded section that would allow a particle to enter a device at the distal end —even if its cross-sectional dimension is greater than that of the distal end. *Id.*

Here, the Court previously construed that the term "retrieval basket" is an apparatus, which is defined by its claimed structural elements and does not refer to a specific medical device. Docket No. 61 at 8. Imposing a standard for the written description requirement as it applies to method claims would be improper for apparatus claims, such as those disclosed in the '670 Patent. Furthermore, requiring the claims to specify precise methods or procedures for a particle's removal from the human body would add improper limitations to the claims that are beyond the scope required. *Id.* at 10. To satisfy the written description requirement, a specification need not provide an exhaustive restatement of the prior art. Nor must a specification expressly disclose if something would have been well known in the art at the time of filing.

As for the enablement requirement, while it is ultimately a question of law, it has underlying questions of fact. Here, there are material disputes as to whether the specification and prior art enable the limitation of a device catching "a solid particle having a maximum cross-sectional dimension greater than a maximum cross-sectional dimension of the distal end of the metal tube transverse to the central longitudinal axis of the metal tube." Accordingly, EVM's Motion for Summary Judgment (Docket No. 105) with respect to the written description requirement is **GRANTED** and **DENIED** with respect to enablement, and Defendants' Cross-Motion for Summary Judgment (Docket No. 123) with respect to the written description requirement is **DENIED**.

## CONCLUSION

For the foregoing reasons, EVM's Motion for Summary Judgment (Docket No. 105) is **GRANTED-IN-PART** and **DENIED-IN-PART**, and Defendants' Cross-Motion for Summary Judgment (Docket No. 123) is **DENIED**.

# DEFENDANTS' MOTION TO STRIKE OPINIONS OF SCOTT D. HAKALA

## APPLICABLE LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that "scientific, technical, or other specialized knowledge" may be admissible where such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue…." FED. R. EVID. 702. Such testimony is only admissible "if [1] the testimony is based upon sufficient facts or data, [2] the testimony is the product of reliable principles and methods, and [3] the expert has reliably applied the principles and methods to the facts of the case." *Id.*; *see also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592–93 (1993). In applying these standards, district courts are charged to act as "gatekeepers" in order to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The primary concern of the "gatekeeper" function "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). To that end, any step an expert takes in formulating his opinion "that renders the analysis unreliable … renders the expert's testimony inadmissible." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999).

A reasonable royalty is based on "what a willing licensor and licensee would bargain for at a hypothetical negotiation on the date infringement started." *States Indus., Inc. v. Mor-Flo Indus., Inc.* 883 F.2d 1573, 1580 (Fed. Cir. 1989). One way to value a reasonable royalty is to estimate the "cost savings from use of the infringing product." *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011) (citing and quoting *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1080–81 (Fed. Cir. 1983). The hypothetical negotiation is limited by

acceptable non-infringing alternatives. *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002) ("The economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation.").

## DISCUSSION

Defendants request that the Court strike the report of Dr. Scott D. Hakala, EVM's damages expert. Docket No. 111. In relevant part, Defendants argue Dr. Hakala improperly relies on summaries of secondary reports about alleged license agreements (Docket No. 111 at 9–11) and on license agreements of non-comparable products (*Id.* at 11–14). Defendants argue such summaries are unreliable because there is no indication that the underlying agreements were reviewed and the information is authentic. *Id.* at 10. Defendants further argue that Dr. Hakala's report is insufficient because it lacks technical and market analysis on how license agreements of non-comparable products relate to the '670 Patent. *Id.* at 12 (citing *LaserDynamics, Inc. v. Quanta computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012)).

EVM responds that Dr. Hakala did not merely rely on summaries from a third party source. Docket No. 117 at 9. EVM argues that the underlying license agreements that serve as the basis for the reports and summaries are not usually available to the public. *Id.* EVM states that Dr. Hakala performed additional research on the data, which represents "first party representations as to the terms of the license agreements." *Id.* EVM also contends that Defendants' asserted non-comparable products are in fact comparable because "[c]ardiovascular stents and similar endovascular medical devices are considered in related medical device markets, often marketed to and used by the same physicians as the infringing products in this case." *Id.* at 11. EVM argues that Dr. Hakala researched these devices and considered "the specific facts and degree of comparability" with each cited license agreement. *Id.*

15

Dr. Hakala's reliance on summaries of secondary reports and license agreements of non-comparable products is improper. Summaries of secondary reports about alleged license agreements are not actual licenses, and there is no guarantee that the information contained in such reports is authentic. This type of information does not rise to the required standard of "sound economic proof." *Riles*, 298 F.3d at 1311. Furthermore, Dr. Hakala's report does not offer any technical or market analysis regarding the comparability of the '670 Patent —or even inferior vena cava filters— to artery balloons, stents, or coatings for stents. Conclusory statements that the devices are comparable because they are "in related medical device markets" does not offer the support needed to make the jump to being a comparable non-infringing product. Docket No. 117 at 11.

## CONCLUSION

Aside from the summaries of secondary reports about alleged license agreements and on license agreements of non-comparable products, Defendants fail to show why its criticisms rise to the level of a *Daubert* challenge instead of cross-examination. Accordingly, Defendants Motion to Exclude and Strike (Docket No. 111) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**SIGNED this 17th day of August, 2015.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE